CITY OF WOONSOCKET

v.

INTERNATIONAL BROTHERHOOD
OF POLICE OFFICERS,
LOCAL 404 et al.

No. 2002–570–Appeal.

Supreme Court of Rhode Island.

Dec. 18, 2003.

Lori Caron Silveira, Providence, for Plaintiff.

Thomas J. McAndrew, Gary T. Gentile, Warwick, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, FLAHERTY, and SUTTELL, JJ.

# OPINION

PER CURIAM.

The plaintiff, the City of Woonsocket (city), appeals from a Superior Court judgment confirming an arbitration award in favor of the defendant union, International Brotherhood of Police Officers, Local 404 (union). The arbitrator found that the grievant, Sgt. Allen Renaud (Renaud), was entitled to injured-on-duty (IOD) status, compensation and benefits consequent thereto, pursuant to the collective bargaining agreement (CBA) between the city and the union. The city also appeals from that portion of the judgment awarding attorney fees to Renaud's private counsel. We directed both parties to appear before this Court and show cause why the issues raised in this appeal should not summarily be decided. No such cause having been shown, we proceed to decide the appeal at this time.

Renaud began work as a Woonsocket police officer in 1981. On or about January 14, 1997, Renaud filed an IOD report with the city complaining of "hypertension." Critically, the city did not formally respond to this claim, although it did begin to pay Renaud's medical expenses. Renaud remained on active duty. On July 14, 1997, Renaud filed a medical report from Joseph Mazza, M.D. (Dr. Mazza), a cardiologist, which concluded that Renaud was receiving cardiac care and was unable to do his duties as a police officer. Renaud was placed on sick leave. On August 19, 1997, the acting police chief sent Renaud a letter that referenced his January 1997 IOD filing, but requested a detailed injury report from Renaud's physician in accordance with section 12.2 of the CBA. The letter said that the report filed in January 1997 did not comply with the requirements of section 12.2. In response, Renaud filed another report, on August 22, 1997, which reiterated that the nature of

his on-duty injury was hypertension. On August 27, 1997, Dr. Mazza submitted a report indicating that Renaud suffered from high blood pressure and angina, apparently attributable to stress in connection with his job as a police officer. Thereafter, on September 8, 1997, the acting chief of police granted Renaud IOD status retroactive to January 10, 1997, through August 10, 1997, but specified that the status was being granted "on the procedural issues as opposed to medical acceptance."

Renaud also initiated disability proceedings with the State Retirement Board (board). In December 1999, the board denied Renaud retirement benefits, apparently finding that his disability was not related to his work as a police officer. Based on this ruling the city, in January 2000, ordered Renaud back to work and discontinued his IOD status. Renaud sought, and was granted, a temporary restraining order prohibiting the city from ordering him back to work. Renaud later submitted another physician's report, which said that he was unable to perform his regular duties and that his hypertension was aggravated by his job. Renaud thereafter pursued IOD status through the grievance procedure. On April 3, 2000, the union filed a timely demand to arbitrate.

The arbitrator held hearings in October 2000, January 2001, and March 2001. The parties stipulated to the following questions for the arbitrator's consideration:

"Did the City violate Articles XII and/or other relevant provisions in its treatment of Grievant Allen Renaud in January of 2000? If so, what shall be the remedy?"

Section 12.2 of the CBA requires the city to "respond in writing within fifteen (15) days of the receipt of the police officer's

claim, indicating its acceptance or rejection thereof." Finding the language of section 12 "utterly unambiguous," the arbitrator ruled that the city's "failure to [file a written response] within the fifteen days provided by the parties' collective bargaining agreement" barred the city from further challenging the job-relatedness of Sgt. Renaud's claim. Accordingly, she held that Renaud must be granted IOD status effective July 21, 2000. The Superior Court agreed; the hearing justice denied the city's motion to vacate the award and awarded attorney fees to Renaud as well as the union. Judgment was entered in favor of the union, confirming the arbitration award. This appeal followed.

■ We often have noted that judicial authority to review an arbitration award is statutorily prescribed and very limited. *Town of North Providence v. Local 2334 International Association of Fire Fighters, AFL–CIO,* 763 A.2d 604, 605 (R.I. 2000) (per curiam); *see Jacinto v. Egan,* 120 R.I. 907, 912, 391 A.2d 1173, 1175 (1978). The standard of review in this situation is governed by G.L.1956 § 28–9–18(a), which allows a court to vacate an arbitrator's award only in three circumstances:

> "(1) When the award was procured by fraud.
>
> "(2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
>
> "(3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28–9–13."

Limited judicial review of these proceedings is anchored in strong public policy favoring private settlement of collective bargaining grievances. *Rhode Island Council 94, AFSCME, AFL–CIO v. State,* 714 A.2d 584, 588 (R.I.1998); *Belanger v. Matteson,* 115 R.I. 332, 356, 346 A.2d 124, 138 (1975). Accordingly, we will not disturb an arbitrator's award "absent a manifest disregard of a contractual provision or a completely irrational result." *Rhode Island Council 94,* 714 A.2d at 587 (quoting *Town of Coventry v. Turco,* 574 A.2d 143, 146 (R.I.1990)); *Matteson,* 115 R.I. at 355–56, 346 A.2d at 137–38. As long as the award "draws its essence" from the contract and is based upon a "passably plausible" interpretation of the contract, it will be upheld. *Jacinto,* 120 R.I. at 912, 391 A.2d at 1176.

■ The city contends that the hearing justice erred in confirming the award because the award conflicts with state law, is not a passably plausible interpretation of the collective bargaining agreement, and is irrational. None of these arguments are persuasive. As we noted above, there was only one issue before the arbitrator: did the city's treatment of Renaud violate the CBA? That is, was the city's response to Renaud's injured-on-duty report consistent with the provisions of the CBA? In making her determination, the arbitrator looked at the plain and unambiguous language of the contract. *See Town of North Providence,* 763 A.2d at 606. That language required the city to respond in writing within fifteen days of receiving an IOD claim or the claim would be considered accepted. Whether one considers Renaud's claim as originating in January or August 1997, it does not appear that the city conclusively accepted or rejected it in writing within fifteen days of those dates. The arbitrator concluded that the city's failure to respond precluded it from contesting whether Renaud suffered an on-duty injury. We are satisfied that this was a plausible interpretation of the relevant contractual provisions and did not lead to an irrational

result. Accordingly, we will not disturb the judgment.

 The city also appeals from the award of attorney fees to Renaud's private attorney. Section 28–9–18(c) provides that if the party to an arbitration decision moves to vacate the award, and that motion is denied, "the moving party shall pay the costs and reasonable attorneys' fees of the prevailing party." Renaud has been represented by his own personal attorney throughout all stages of this litigation. Accordingly, when the Superior Court confirmed the arbitration award, both the union attorney and Renaud's attorney moved for reimbursement of fees. The Superior Court ruled that the "prevailing party" included not only the union, but also the employee, and awarded attorney's fees to both attorneys.

We are of the opinion that § 28–9–18(c) does not entitle Renaud's personal attorney to an award of attorney fees. The arbitration statute provides that the right to arbitrate labor controversies is grounded in the contract between the employer and the employee's collective bargaining representative. Section 28–9–1 provides in pertinent part: "A provision in a written contract between an employer and an association of employees, [or] a labor union * * * to settle by arbitration any controversy is valid, irrevocable, and enforceable * * *." Although individual employees are beneficiaries to the contract, they are not parties to that contract. We note that there is no suggestion of unfair representation by the union.

In this instance, the city and the union submitted the controversy to arbitration pursuant to § 28–9–1. Although Renaud entered an appearance in the arbitration and again in Superior Court, he never was granted the status of a party. The CBA provided that the union would represent Renaud's interests in this matter and the union did so. Renaud's decision to retain private counsel was his choice, and the city may not be held liable for that decision. Accordingly, Renaud is not a "prevailing party" within the meaning of § 28–9–18(c), and the city is not required to pay his attorney's fees.

The judgment of the Superior Court confirming the arbitrator's award is affirmed in part and vacated in part. That portion of the judgment awarding attorney's fees to Renaud's private counsel is vacated. The papers of the case are remanded to the Superior Court.